# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00589-COA

**KYLE VAN CAUTHEN**                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

DATE OF JUDGMENT:              04/25/2023
TRIAL JUDGE:                  HON. STEVE S. RATCLIFF III
COURT FROM WHICH APPEALED:    RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                              BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: ALEXANDRA LEBRON
DISTRICT ATTORNEY:            JOHN K. BRAMLETT JR.
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 10/15/2024
MOTION FOR REHEARING FILED:

     **EN BANC.**

     **SMITH, J., FOR THE COURT:**

¶1.    A Rankin County Circuit Court jury convicted Kyle Van Cauthen of non-residential burglary, and the court sentenced Cauthen to serve seven years in the custody of the Mississippi Department of Corrections (MDOC), with the sentence set to run consecutively to any other sentences. On appeal from his conviction and sentence, Cauthen argues the circuit court erred by refusing to instruct the jury on the lesser-included offense of trespass. Finding no error, we affirm.

## FACTS

¶2.    On the morning of Monday, February 14, 2022, Samantha Bowling arrived at her

second-story office located on the campus of Jackson Preparatory School (Prep). As soon as she entered her office, Bowling noticed that her desk chair was missing. Assuming her missing chair was part of a Valentine's Day prank, Bowling called a coworker. While on the phone with her coworker, Bowling discovered that the safe located underneath her desk was also missing.

¶3. Bowling testified that the safe was very heavy and was approximately three feet tall by three feet wide. She stated that the safe held titles to various vehicles and trailers that Prep owned, a box with petty cash inside, and a bag containing money from a school sporting event. The missing money bag had the word "Prep" emblazoned on the front, and Bowling testified that she had never before seen another similar-looking money bag. In addition, Bowling stated that a "swag bag" from the Prep admissions office was missing. Bowling described the "swag bag" as a drawstring bag with the word "Prep" printed across the front. She explained that each "swag bag" contained various items, including a t-shirt, pencils, and a pen, with the word "Prep" on them and were given to people who toured the school campus.

¶4. In all, Bowling testified that the missing office safe had contained about $1,600 in cash. She estimated that the safe itself was worth around $300. Bowling confirmed that when she had left her office the Friday before Valentine's Day, she had locked the safe under her desk and closed her office door.

¶5. David Gammill, Prep's school safety director, testified that he had served as a law

enforcement officer for thirty-nine years prior to his retirement from the Flowood Police Department. After learning about the missing safe, Gammill examined Bowling's office and noticed that some of the ceiling tiles had been disturbed. After reporting the burglary and his initial findings to the Flowood Police Department, Gammill began to review Prep's surveillance footage.

¶6.    During Gammill's testimony, the State admitted into evidence without an objection a condensed version of Prep's surveillance footage from the time surrounding the burglary. Gammill explained that the video footage showed a white male walking around Prep's campus between 3 a.m. and 4 a.m. on Sunday, February 13, 2022. The man wore a red hooded sweatshirt with white letters across the front. Surveillance footage from interior cameras showed the suspect enter a building and walk around various rooms and hallways. Upon reaching the administrative offices, the suspect opened several closed doors and entered the rooms. Gammill testified that the first administrative office the suspect entered contained the stolen "swag bag," which the suspect later could be seen wearing like a book bag.

¶7.    Gammill explained that the footage next showed the suspect using a rolling office chair to transport the stolen safe down the hallway and outside the building. The suspect retrieved his car, loaded the safe into the car, left the office chair on the sidewalk, and then drove away. At the time of reviewing the surveillance footage, Gammill believed, based on his training and experience, that the suspect's car was either a Crown Victoria or a Lincoln

Continental.

¶8. Gammill inspected the door the suspect had used to enter Prep's buildings. Gammill stated he was unable to find any sign of "prying on the door or it being kicked in" to indicate forced entry. Gammill testified the door had a magnetic locking system that was supposed to engage whenever the door closed so that only an authorized key card could reopen the door. Gammill explained, however, that after the burglary he learned the door's locking mechanism did not always catch properly, which could allow a person to enter the door without using a key card. Gammill confirmed, though, that the door in question was supposed to be locked at the time of the burglary and would have been closed for the weekend. Gammill also confirmed that as far as he knew, no Prep employees used their badges to enter the campus buildings during the time of the burglary.

¶9. Investigator Donald McBee with the Flowood Police Department investigated the burglary at Prep. From his inspection of Bowling's office, Investigator McBee testified that it appeared the suspect had climbed over a wall and accessed Bowling's office through the ceiling tiles. Although a key was required to unlock Bowling's office door from the outside, Investigator McBee stated that from inside the office, a person could easily unlock the door by "flip[ping] a knob . . . ."

¶10. From his review of the surveillance footage, Investigator McBee determined that the suspect's height was approximately 5'5" and that he appeared to drive a light-colored Lincoln Town Car. Investigator McBee logged into a system that stored photos of

4

automobile license plates taken by local traffic cameras. Searching the time periods right before and after the burglary, Investigator McBee reviewed the photos for a match to the suspect's car. The system showed a vehicle matching the suspect's car driving in the direction of Prep just before the burglary. The system showed the same vehicle driving in the opposite direction just after the burglary occurred. Investigator McBee looked up the vehicle's license plate number and discovered the car belonged to Michael Cauthen.

¶11. When contacted, Michael stated that he had purchased the car about a month earlier for his thirty-four-year-old son, Kyle Cauthen, to drive. Upon running a check on Cauthen's driver's license, Investigator McBee learned that Cauthen was 5'4" and matched the approximate height determined for the burglary suspect. Michael informed Investigator McBee that the same son, Cauthen, currently rented the home of Michael's mother. Michael stated that his mother now resided with him and that Cauthen was the only person currently occupying her home. After obtaining both a search warrant and an arrest warrant, Investigator McBee went to the home and discovered Cauthen sitting in a Lincoln Town Car parked in the driveway. The car's license plate matched the one that Investigator McBee had obtained using the photos from local traffic cameras. After arresting Cauthen, Investigator McBee discovered $1,856 in his front pocket. A search of the home revealed clothing items in Cauthen's bedroom that matched those the burglary suspect wore on Prep's video surveillance footage.

¶12. Investigator McBee testified that Michael contacted him about a month after

Cauthen's arrest. Michael informed Investigator McBee that he had discovered additional Prep property in the bedroom Cauthen had occupied at his mother's home. Michael had found the items inside a box in Cauthen's bedroom. The items included the missing Prep "swag bag" that contained a Prep t-shirt and pencils and the missing Prep money bag.

¶13. Michael testified that his son contacted him shortly after the arrest. Cauthen asked his father to check on his belongings still at the home he had rented from Michael's mother. Michael stated that Cauthen specifically mentioned some boxes in his bedroom. When Michael went to the home to check on Cauthen's belongings, he discovered a red Prep drawstring bag inside one of the boxes that Cauthen had referenced. Without looking at the contents of the drawstring bag or the other contents of the box he had opened, Michael contacted the authorities and turned the items over to Investigator McBee.

¶14. Following Michael's testimony, the State rested its case-in-chief. The defense chose not to call any witnesses and rested as well. After deliberating, the jury found Cauthen guilty of non-residential burglary. The circuit court sentenced Cauthen to serve seven years in MDOC's custody. In addition, the circuit court ordered Cauthen to pay $2,024 in restitution and $1,431.40 in fees, with the amounts due within one year after Cauthen's release from MDOC's custody. Cauthen moved unsuccessfully for judgment notwithstanding the verdict or, alternatively, a new trial. Aggrieved, Cauthen appeals.

## DISCUSSION

¶15. In his sole issue on appeal, Cauthen contends that the circuit court erred by failing to

6

give his proposed jury instruction on the lesser-included offense of trespass. "We review the refusal of a lesser-included-offense instruction de novo." *Frazier v. State*, 382 So. 3d 1193, 1200 (¶21) (Miss. Ct. App. 2024). While "[t]respass is a lesser-included offense of burglary[,]" Cauthen would be "entitled to a lesser-included-offense instruction only if there is an evidentiary basis in the record to support" the instruction. *Croom v. State*, 374 So. 3d 609, 612 (¶10) (Miss. Ct. App. 2023) (citations and internal quotation mark omitted).

¶16.    As we explained in *Croom*,

> A defendant is entitled to have every legal defense he asserts to be submitted as factual issue for determination by the jury under proper instruction of the court. However, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. A lesser-included-offense instruction should be granted unless the trial court, and ultimately the appellate court, can say that taking the evidence in the light most favorable to the accused, and considering all reasonable inferences which may be drawn in favor of the accused from the evidence, no reasonable jury could find the defendant guilty of the lesser[-]included offense and conversely not guilty of at least one essential element of the principal offense.

*Id.* at 612-13 (¶10) (citations, internal quotation marks, and emphasis omitted).

¶17.    During the jury-instruction conference, Cauthen's attorney requested a lesser-included-offense instruction on trespass. In arguing for the proposed instruction, Cauthen's attorney stated, "I think it's quite possible that the jury could think, well, maybe that was Mr. Cauthen in the school and not find the element of break-in, and that seems like that would probably be trespassing."

¶18.    In refusing the defense's proposed trespass instruction, the circuit judge explained that

7

he found no foundation in the trial evidence—especially no evidence presented by the defense—to support "the conclusion that the suspect in this case was trespassing only . . . ." Rather, the circuit judge found that the "[t]he evidence supports that whoever this was" at Prep acted in a way that "could be considered breaking and entering" with "the intent to commit a crime of larceny once inside the building . . . ." Moreover, the circuit judge noted that Cauthen had not provided "any viable alternative of why he would be inside" Prep or "that he was even inside" Prep. The circuit judge stated that as he understood Cauthen's theory of defense, Cauthen was asserting "it was not him [in the surveillance video,] and he was not" at Prep at all. For these reasons, the circuit judge concluded that the trial evidence failed to support a lesser-included-offense instruction and refused Cauthen's proposed jury instruction on trespass.

¶19. In *Wilson v. State*, 639 So. 2d 1326, 1328 (Miss. 1994), the Mississippi Supreme Court addressed a defendant's similar claims that in his trial for the burglary of a business, he was entitled to have the jury instructed on the lesser-included offense of trespass. At trial, Wilson partially defended himself on the basis "that he was not guilty of any crime because he had permission to be on the property and to take" the item at issue. *Id.* On appeal from his conviction and sentence, Wilson argued that a lesser-included-offense instruction on trespass was warranted at trial because he was not guilty of burglary, though he "*may* have been trespassing." *Id.* at 1329 (emphasis added). The supreme court concluded, however, that the record contained no evidentiary support for giving a lesser-included-offense

8

instruction on trespass and that "at best[,] the instruction would be based purely on speculation or surmise." *Id.* As the supreme court noted, Wilson's theory of defense was that "he was not guilty of any crime at all[,]" and there was no evidence to support a "middle ground" between his theory of defense and a basis for instructing the jury on trespass. *Id.* As a result, the supreme court found no error in the circuit court's refusal to instruct the jury on the lesser-included offense of trespass. *Id.* at 1330.

¶20. Much like in *Wilson*, the record before us reflects that Cauthen's theory of defense was that he had committed no crime at all and that he was misidentified as the person at Prep at the time of the burglary. Cauthen gave his own opening statement at trial and focused his attention on whether he could be identified as the perpetrator of the burglary committed that night. In so doing, Cauthen told the jury that he stood before them as "an innocent man pleading not guilty to a crime that [he] did not commit." Cauthen further stated, "I am not denying the fact that a crime might have occurred [at Prep] on the early morning of February 13th, 2022. I am simply announcing that the State's case against me is merely assumptions." And during closing arguments, Cauthen's attorney contended that none of the State's evidence could "directly show" Cauthen had been the suspect on Prep's campus the night of the burglary.

¶21. Although Cauthen argues on appeal that the circuit court erred by failing to instruct the jury on trespass, "there was no evidence [presented at trial] of a 'middle ground'" between Cauthen's theory of defense—total innocence—and a basis to instruct the jury on

9

trespass. *Barnes v. State*, 389 So. 3d 1086, 1091 (¶16) (Miss. Ct. App. 2024). By contrast, "substantial evidence supported the burglary conviction." *Id.* As the defendant, "the burden to support the giving of a lesser-included[-]offense instruction" fell on Cauthen. *Id.* In responding to the State's objection to the proposed instruction, though, Cauthen's attorney could only say, "I think it's quite possible that the jury *could* think, well, *maybe* that was Mr. Cauthen in the school and not find the element of break-in, and that seems like that *would probably be* trespassing." (Emphasis added).

¶22. But as the supreme court noted in *Wilson*, such an uncertain and unsubstantiated assertion fails to suffice as an evidentiary basis for giving a lesser-included-offense instruction and, at most, amounts merely to "speculation or surmise." *Wilson*, 639 So. 2d at 1329. Thus, even when "taking the evidence in the light most favorable to [Cauthen,]" the record reflects that "no reasonable jury could find [him] guilty of the lesser[-]included offense" of trespass. *Croom*, 374 So. 3d at 613 (¶10) (citation and emphasis omitted). As a result, we find no error in the circuit court's refusal to instruct the jury on Cauthen's proposed instruction.

## CONCLUSION

¶23. Because there was no foundation in the trial evidence for Cauthen's lesser-included-offense instruction on trespass, we find no error in the circuit court's refusal to give the proposed jury instruction. Accordingly, we affirm Cauthen's conviction and sentence for non-residential burglary.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. EMFINGER AND WEDDLE, JJ., NOT PARTICIPATING.**